# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | Case No. 09-40041-01-JAR |
| v. ) | Case No. 12-4127-JAR |
| ) | |
| ADAN MOLINA, ) | |
| ) | |
| Defendant/Petitioner. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Adan Molina's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 438). In his motion, Petitioner seeks relief on grounds that he was denied effective assistance of counsel with respect to his guilty plea and that the Government breached the Plea Agreement. The Government has responded (Doc. 442). After a careful review of the record and the arguments presented, the Court denies Petitioner's motion without further evidentiary hearing.

**I.     Factual and Procedural Background**

On April 15, 2009, Petitioner was indicted on 49 counts of methamphetamine trafficking offenses along with nine other defendants; a Superseding Indictment was filed on April 7, 2010, and contained 63 counts against seven defendants. In Count One, Petitioner was charged with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine; the Superseding Indictment also included multiple counts of using a communication facility in committing and facilitating the conspiracy as well as distribution and possession of methamphetamine, conducting a financial transaction affecting interstate commerce, attempting

to travel from Kansas to Arizona with the intent to promote, manage, establish and carry on the conspiracy, distribution of methamphetamine, and possession of firearms by illegal aliens.[1] Petitioner was represented by Mark L. Bennett, Jr. during pre-trial, plea, and sentencing proceedings.

On November 1, 2010, a jury trial commenced against Petitioner and his remaining co-defendant, Alfonso Rubio-Ayala.[2] On November 4, 2010, after the Government had presented two days of evidence and testimony, Petitioner entered a guilty plea to Count One of the Superseding Indictment charging him with conspiracy to possess with the intent to distribute and dispense methamphetamine, in violation of 21 U.S.C. § 846.[3]

As part of his plea, Petitioner admitted that he engaged in the following drug trafficking activity:

> Between June 15, 2008, and June 17, 2009, Molina participated in an organization that distributed methamphetamine from Arizona, to Great Bend, Kansas, Topeka, Kansas and Kansas City, Kansas. The amounts of methamphetamine distributed during the course of this conspiracy exceeded 500 grams. Indeed, at the conclusion of this investigation, lawful search warrants were executed at the co-conspirator' respective residences and at stash houses associated with this organization, based in part on the aforementioned affidavit. At that time, pursuant to said lawful search warrants, D.E.A. seized approximately $694,000 in U.S. Currency, numerous firearms, several vehicles, and approximately 10 pounds of methamphetamine.[4]

Petitioner also waived his right "to appeal or collaterally attack any matter in connection

---

[1] Doc. 143.

[2] Doc. 284. Petitioner's other co-defendant, Kelly Rubio, entered a guilty plea the morning trial started. Doc. 278; co-defendant Rubio-Ayala entered a guilty plea on November 4, 2010, prior to Molina's plea. Doc. 289.

[3] Doc. 291.

[4] Doc. 291 ¶ 2.

2

with this prosecution, the defendant's conviction, or the components of the sentence to be imposed," except as limited by *United States v. Cockerham*.[5] During the change of plea hearing, Petitioner acknowledged that his conviction on this charge could subject him to a sentence of not less than ten years nor more than imprisonment for life.[6] In the Plea Agreement, Petitioner represented that he "understands that the maximum sentence which may be imposed as to Count 1 of the Superseding Indictment to which the defendant has agreed to plead guilty is not less than ten (10) years nor more than life imprisonment . . . ."[7] At the plea hearing, the prosecutor advised Petitioner of this potential sentence in open court, and Petitioner indicated that he understood.[8] After engaging in a Rule 11 plea colloquy with Petitioner, this Court accepted his guilty plea.[9]

In calculating Petitioner's total offense level, the Presentence Investigation Report ("PSR") found that his base offense level was 38, pursuant to U.S.S.G. § 2D1.1(c)(1), as Petitioner was held accountable for over 1.5 kilograms of methamphetamine; added two levels under § 2D1.1(b)(1) because Petitioner possessed a firearm during the conspiracy; added two levels under § 2D1.1(b)(5)(A) because the offense involved importation of methamphetamine from Mexico; and added four levels under § 3B1.1(a) because Petitioner was an organizer or

---

[5]*Id*. ¶ 11; 237 F.3d 1179, 1187 (10th Cir. 2001) (holding that a valid waiver of collateral challenges in the plea agreement waives the right to bring a § 2255 motion except for ineffective assistance claims challenging the validity of the plea or the waiver).

[6]Doc. 396, Plea Hrg. Tr. at 15.

[7]Doc. 291¶ 1.

[8]Doc. 396 at 15.

[9]*Id*. at 21.

3

leader of the criminal activity.[10]  These calculations yielded a total offense level of 43,[11] which combined with Petitioner's Criminal History Category of I, resulted in an advisory Guidelines sentencing range of life imprisonment.[12]

Petitioner lodged two objections to the calculations in the PSR that are relevant to the instant motion: the two-level enhancement for importation of methamphetamine and the four-level enhancement for leader or organizer of the conspiracy, on the grounds that the Plea Agreement prohibited the Government from advocating for either of these enhancements.[13] Petitioner based his arguments on the fact that, in negotiating the plea, the parties struck language in the factual basis set forth in paragraph two of the Plea Agreement, referencing both Petitioner's leadership role and the organization's importation of the methamphetamine from Mexico.  Specifically, the parties changed "Molina *led* an organization that distributed methamphetamine *from Mexico*, to Arizona . . ." to "Molina *participated in* an organization that distributed methamphetamine *from Arizona* . . . ."[14]  The parties also struck the entirety of paragraph three of the Plea Agreement, in which the parties agreed that the Sentencing Guidelines should be applied by the Court:

---

[10]Doc. 326, ¶¶ 47-51.

[11]*Id*. ¶ 57.  Although the total offense level was calculated to be 46, the Guidelines prohibit an actual total offense level of 46, which is treated as a level 43.  U.S.S.G. Chapter 5, Part A, application note 2.

[12]*Id*. ¶ 81.

[13]Doc. 333 at 6-7; Doc. 405, Sent. Hrg. Tr. at 75-76, 79.

[14]Doc. 291 at 3 (emphasis added).

4

### 3. Application of the Sentencing Guidelines

The parties request that the United States Sentencing Guidelines (Guidelines) be applied by the Court to calculate the applicable sentence in this case and that a sentence consistent with the Guidelines be imposed by the Court. The defendant further waives any right to have facts that determine the offense level under the Guidelines alleged in an indictment and found by a jury beyond a reasonable doubt; agrees that facts that determine the offense level will be found by the Court at sentencing by a preponderance of the evidence and agrees that the Court may consider any reliable evidence, including hearsay; and the defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The parties further agree to request a sentence within the guideline range determined to be appropriate by the U.S. Probation Department. In other words, the United States will not request a sentence in excess of the high end of the guideline range and the defendant will not request a sentence below the low end of the guideline range. **The parties understand this agreement binds the parties only and does not bind the Court.**[15]

At the sentencing hearing, the Government presented testimony of Agent Douglas Garman, who testified about statement made by Petitioner and co-conspirators to law enforcement; items seized during the search at Petitioner's residence, including $692,000 in cash, firearms, and ten pounds of methamphetamine; and wiretap conversations between Petitioner and co-conspirators.[16] The Government argued that defense counsel had misconstrued the import of the changes to the Plea Agreement:

> During the plea negotiations, and the reference to the factual basis, Mr. Bennett represented to me that Mr. Molina did not want to admit that he was the leader and that he imported the methamphetamine from Mexico. And I indicated, well, we'll mark that out and we'll fight over it at sentencing. And we in fact are. And for him to suggest that in any way, shape, or form that it was represented to him by myself or anyone else that we would not

---

[15]*Id*. at 3-4 (emphasis added).

[16]Doc. 405 at 4-68.

5

> advocate that this defendant was a leader, that we would not advocate that this dope came from Mexico is disingenuous and insulting.[17]

Defense counsel responded,

> Well, Judge, in response, no, I agree. Mr. Hough didn't say, "We won't ask this or we won't ask for that." But the fact of the matter is the written agreement is the written agreement. And we would submit that given that agreement the government's bound by it.[18]

After hearing argument from counsel, this Court accepted the findings of the PSR, overruled Petitioner's objections, applied both the four-level enhancement for being a leader of the conspiracy as well as the two-level enhancement for importation of drugs from Mexico, and granted Petitioner a two-level reduction for acceptance of responsibility, resulting in a total offense level of 43. The Court then sentenced Petitioner to a term of imprisonment for life for this offense.[19] In so ruling, the Court noted that the language in the factual basis of the Plea Agreement in no way tied the Court's hands in calculating Petitioner's sentence, and its belief that "a sentence of life imprisonment represents one that appropriately addresses the sentencing factors under the statute," reflecting an accurate application of the sentencing factors under 18 U.S.C. § 3553(a).

Petitioner filed a direct appeal to the Tenth Circuit Court of Appeals. The court denied his appeal, finding that Petitioner had waived issues regarding calculation of the drug quantity attributable to him and that his sentence was procedurally and substantively unreasonable, and that his allegation that the Government breached the Plea Agreement was too conclusory to

---

[17]*Id.* at 78.

[18]*Id.* at 79.

[19]Doc. 343.

warrant consideration.[20] Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied on December 5, 2011.[21] Petitioner filed this timely § 2255 Motion on September 27, 2012.[22]

## II.     Legal Standards

Under § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion. . . .

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[23] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[24] An evidentiary

---

[20]*United States v. Molina*, 432 F. App'x 744, 747 (10th Cir. 2011) (granting government's motion to dismiss appeal based on appellate waiver in Plea Agreement).

[21]Doc. 435.

[22]Doc. 438; *see* 28 U.S.C. § 2255(f)(1) ("A 1-year period of limitation shall apply to a motion under this section. The limitation shall run from . . . the date on which the judgment of conviction becomes final.").

[23]28 U.S.C. § 2255(b).

[24]*See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

7

hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[25]

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[26] "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not."[27] A movant may overcome this procedural bar by showing either of "two well recognized exceptions."[28] First, the movant must show good cause for not raising the issue earlier and actual prejudice to the movant's defense if the issue is not considered.[29] Cause may "be established by showing that counsel rendered constitutionally ineffective assistance."[30] Second, the "failure to consider the federal claims will result in a fundamental miscarriage of justice."[31]

## III. Discussion

---

[25]*Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch,* 58 F.3d at 1471 ("the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[26]28 U.S.C. § 2255.

[27]*United States v. Magleby,* 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied,* 547 U.S. 1097 (2006).

[28]*United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied,* 544 U.S. 904 (2005).

[29]*Id.*

[30]*United States v. Wiseman,* 297 F.3d 975, 979 (10th Cir. 2002) (citations omitted).

[31]*Cervini,* 379 F.3d at 990 (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)); *see Bousley v. United States,* 523 U.S. 614, 621–22 (1998) (holding that a showing of actual innocence meets the fundamental miscarriage of justice prong).

Petitioner requests the Court set aside his guilty plea and sentence on two grounds. First, he claims that his counsel "failed to adequately advise [him] concerning the length of his sentence if he pleaded guilty, and failed to advise him to enter a plea agreement prior to the start of the trial." Second, he claims that the Government breached the Plea Agreement by arguing for the leader/organizer and importation enhancements at sentencing. The Court discusses each claim in turn.

A. **Ineffective Assistance**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[32] A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[33] First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[34] To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[35] This standard is "highly demanding."[36] Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[37] In all events,

---

[32] U.S. Const. amend. VI; *Kansas v. Ventris*, 556 U.S. 586 (2009).

[33] 466 U.S. 668 (1984).

[34] *Id*. at 688.

[35] *Id*. at 690.

[36] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[37] *Fox v.Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

9

judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[38] Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'"[39]

Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[40] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[41] A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[42] This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[43] When ineffective assistance of counsel is alleged to have occurred at the plea stage, the defendant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."[44] In other words, the defendant must show a

---

[38] *Strickland*, 466 U.S. at 689.

[39] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[40] *Strickland*, 466 U.S. at 687.

[41] *Id*. at 694.

[42] *Id*.

[43] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[44] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Petitioner cites two recent United States Supreme Court decisions addressing the question of ineffective assistance of counsel with regard to a defendant's rejection of a plea agreement. In *Missouri v. Frye*, the Court held that counsel's failure to inform his client of a plea offer may constitute ineffective assistance of counsel. 132 S. Ct. 1399, 1408 (2012). In *Lafter v. Cooper*, the defendant went to trial rather than accept a plea deal as a result of ineffective assistance of counsel during the plea negotiation process, where counsel incorrectly advised him that he could not be convicted at trial, and to reject the plea and

reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.[45] As part of his proof, a defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances."[46] A defendant's mere assertion that he would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient to entitle him to relief.[47] Instead, the court evaluates the factual circumstances surrounding the plea to predict "whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors."[48] While a defendant need not show that he would have prevailed at trial, his prospects of succeeding inform the court's view whether he in fact would have gone to trial absent the alleged errors.[49] The strength of the government's case is often the best evidence whether defendant in fact would have changed his plea and insisted on going to trial.[50]

A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[51] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on

---

proceed to trial. 132 S. Ct. 1376, 1386 (2012). This case arises in a different context, as Petitioner contends that he would not have taken the plea, but for counsel's ineffective advice. Nonetheless, the standard remains that but for the ineffective assistance, there is a reasonable probability that the result would have been different.

[45]*Id.*

[46]*Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)).

[47]*Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).

[48]*Id.*; *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002).

[49]*United States v. Triplett*, 263 F. App'x 688, 690 (10th Cir. 2008).

[50]*See Hill*, 474 U.S. at 59-60.

[51]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

the ground of lack of sufficient prejudice . . . that course should be followed.'"[52] Molina cannot meet either prong of *Strickland*.

Petitioner acknowledges that his counsel told him "that if he pleaded guilty, the sentence could be anywhere between 10 years and life imprisonment, and that the judge would ultimately determine his sentence." Nevertheless, Molina claims that although he was advised that a sentence of life was *possible*, his counsel performed deficiently by failing to tell him that he would *likely* receive a sentence of life imprisonment, given the evidence presented at trial as well as the Government's intent to seek enhancements based on information deleted in the Plea Agreement. Molina argues that "a cursory review of the Guideline[s] would demonstrate that [his] total offense level would be at least 43, resulting in a Guideline sentence of life imprisonment, and that counsel should have advised him accordingly."

Petitioner's allegations are insufficient to prove that counsel's performance was constitutionally deficient. Petitioner contends that based on counsel's advise, he believed that he could receive a sentence as low as ten years and that he would not receive life imprisonment. A miscalculation or erroneous sentence estimation by defense counsel by itself is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.[53]

---

[52]*Id*. (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[53]*United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *see United States v. Melcher*, No. 10-504, 2010 WL 1971913, at *2 (10th Cir. May 18, 2010) (finding performance not deficient; prediction of 200 months, sentence of life in prison); *United States v. Herrera*, 289 F. App'x 302, 304-05 (10th Cir. 2008) (finding erroneous estimate not deficient where defendant recognized that he faced potential life sentence and plea agreement stated that final sentence was solely in court's discretion); *United States v. Moreira*, No. 06-20021-KHV, 2010 WL 4025032, at *4 (D. Kan. Oct. 13, 2010) (holding defense counsel's failure to advise defendant his sentence would likely be life based on potential sentencing enhancements was not ineffective where defendant acknowledged he was subject to life sentence).

Petitioner does not allege that counsel promised or guaranteed that if he pled guilty, he would not receive a life sentence.[54] Moreover, even if counsel had advised Petitioner that he could receive a sentence as low as ten years, at the change of plea hearing, Petitioner stated that he fully understood that he was subject to a maximum sentence of life imprisonment. In its colloquy, the Court explained to Petitioner that it would consider many relevant conduct factors in calculating his sentence under the Guidelines, including the type and quantity of drugs involved in the conspiracy, the use of firearms, whether he was a leader or organizer in the conspiracy, and his individual circumstances and background.[55] The Court further explained, and Petitioner understood, that because of these factors, it was impossible for the Court, the Government or defense counsel to predict with certainty the sentence that Petitioner would receive, but that it would be in the range of ten years to life imprisonment.[56] Thus, any miscalculation by defense counsel, though significant in terms of length of prison term, was within the Guidelines range and was not deficient.

Nor has Petitioner alleged sufficient facts to show that counsel's alleged advice was prejudicial. At the change of plea hearing, Petitioner acknowledged that his plea was free and voluntary and that no one had forced or threatened him to enter it. The Plea Petition states that Petitioner knows that there is no authority for his attorney to make a promise, suggestion or prediction of a lighter sentence because of his plea of guilty, other than what is set forth in the

---

[54]*See United States v. Gonzalez*, 209 F. App'x 842, 846 (10th Cir. 2006) (explaining erroneous estimate of nine to fifteen years in prison does not invalidate plea despite life sentence); *Cunningham v. Diesslin*, 92 F.3d 1054, 1061 (10th Cir. 1996) (holding that a defendant's subjective understanding not based on promise made by defense attorney, prosecutor or court will not undermine constitutionality of plea).

[55]Doc. 396 at 12-14.

[56]*Id*. at 14-15.

13

Plea Agreement.[57] The certificate of counsel attached to the Petition states that defense counsel made no predictions or promises concerning any sentence the Court might impose.[58] After being informed about his right to trial and the burden on the Government, the statutory minimum and maximum, and the fact that the term of his sentence was solely within the discretion of the Court, Petitioner pled guilty. An erroneous sentencing prediction is not prejudicial where the Court has conducted an adequate Rule 11 colloquy.[59]

In addition, Petitioner has not shown that in light of the evidence against him, "a decision to reject the plea bargain would have been rational under the circumstances."[60] He has not made a showing of reasonable probability he would have been acquitted at trial, nor attempted to do so, leaving the Court to conclude that the reasonable probability is that, had he not plead but continued with trial, the result would not have been different.

Finally, Petitioner also claims that counsel was ineffective for failing to advise him to enter a plea before trial. Petitioner does not discuss, analyze or otherwise mention this claim in any of his submissions.[61] Accordingly, Petitioner's claim of ineffective assistance of counsel is denied.

---

[57] Doc. 291 at 3, ¶ 16.

[58] *Id.* at 6, ¶ 7.

[59] *See United States v. Kutilek*, 260 F. App'x 139, 147 (10th Cir. 2008) (no prejudice from attorney miscalculation in light of judge's statements at plea hearing); *United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007) (same).

[60] *v. Kentucky*, 559 U.S. 356, 372 (2010).

[61] *See United States v. Moya*, No. 11-1132, slip op. at 6 (10th Cir. Apr. 16, 2012) (finding petitioner's ineffective assistance of counsel claim failed because he "allege[d] no facts that would suggest his attorney could have successfully negotiated a plea agreement" with the provisions petitioner wanted).

**B.     Breach of Plea Agreement**

An appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement.[62] "Where the Government obtains a guilty plea which is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea."[63] In interpreting a plea agreement, the court relies on general principles of contract law.[64] The court thus "look[s] to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea."[65] Any ambiguities are construed against the Government.[66]

Petitioner contends that he entered a guilty plea based upon promises made by the Government during plea negotiations, which are reflected in the written Plea Agreement. Specifically, Petitioner alleges that when the parties removed the language in the Plea Agreement regarding his leadership role and importation of methamphetamine from Mexico, he understood and believed that the Government would not raise these enhancements at sentencing. Petitioner further argues that the Government removed this language from the Plea Agreement in order to entice Petitioner to plead guilty, and violated the Agreement when it argued in support of the enhancements at sentencing. "Simply put," Petitioner contends, "the Government

---

[62]*United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008) (citing *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008)).

[63]*United States v. Villa-Vazquez*, 536 F.3d 1189, 1196 (10th Cir. 2008).

[64]*United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007).

[65]*United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007).

[66]*Cachucha*, 484 F.3d at 1270.

15

deceived Petitioner from the start."

In this case, the Plea Agreement specifically states that relevant conduct will be used to calculate Petitioner's sentence, and the Agreement describes relevant conduct as "conduct charged in any dismissed counts of the indictment," as well as "all other uncharged related criminal activities."[67] In addition, the Agreement expressly requires the Government to "provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case."[68] The same provision also permits the Government "to respond to comments made or positions taken by [Petitioner]" and "to make any recommendations it deems appropriate regarding the disposition of the case," so long as the recommendations are not contrary to the Agreement.[69] The Government agreed that in return for Petitioner's guilty plea, it would "not file any additional charges against [Petitioner] arising out of the facts forming the basis for the present Superseding Indictment and to dismiss the remaining charges pending against [Petitioner] in this matter at the time of his sentencing."[70]

Despite these unambiguous provisions, Petitioner argues that the Government breached the Plea Agreement by arguing that he was a leader or organizer of the conspiracy and that he imported the methamphetamine from Mexico, which the parties omitted from the factual basis for the guilty plea. The Court disagrees. Rather than a breach of the Plea Agreement, the Government's arguments concerning relevant conduct and the sentencing enhancements are

---

[67] Doc. 291 at 11, ¶ 4.

[68] *Id.* at 18-19, ¶ 14.

[69] *Id.*

[70] *Id.* at 4-5, ¶ 5.

16

required by the express language of the Agreement: indeed, the Government specifically agreed to provide the Court with all information germane to sentencing. Further, as the Government points out, the Government did not breach any express provision in the Plea Agreement, as nothing in the Plea Agreement affirmatively prohibited the Government from arguing for either of these enhancements. And finally, the factual basis for the plea set out in paragraph two of the Agreement does not relate to sentencing, but rather, serves to memorialize the parties' agreement as to the sufficiency of the evidence to establish the essential elements of Count One of the Superseding Indictment. The deleted factual references were not essential elements of the conspiracy count, and were unnecessary to establish those elements.

Thus, Petitioner's purported belief that the Government was bound by the factual statement in paragraph two for sentencing purposes is unreasonable.[71] Because the Plea Agreement left the matter of sentencing open and unresolved, Petitioner could not have reasonably construed the deletion of references to his leadership role and importation of the methamphetamine as any sort of promise or agreement related to sentencing. As noted, paragraph two served to establish a factual basis for Petitioner's plea, and no other provision of the Plea Agreement referred to it. Accordingly, the Court finds that no promise existed with respect to sentencing, and Petitioner could not have reasonably understood from the Plea Agreement that any such promise existed. Petitioner's claim is denied.

---

[71]*See United States v. Burke*, 633 F.3d 984, 994-95 (10th Cir. 2011) (finding government did not breach plea agreement in child pornography prosecution by requesting that the defendant be held responsible for 1,155 images even though the agreement's factual recitation noted the forensic examiner had discovered only 155 images of child pornography; noting plea agreement did not otherwise bind the government to the factual recitation); *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212-14 (10th Cir. 2008) (holding the government did not breach its agreement when the factual recitation noted a lower quantity of drugs than what the government advocated for in the pre-sentence report).

### III. Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[72] A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[73] A petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA. He must, however, "prove something more than the absence of frivolity or the existence of mere good faith."[74] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[75] For the reasons detailed in this Memorandum and Order, Molina has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA as to its ruling denying his

§ 2255 motion without a hearing.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Adan Molina's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 438) is DENIED without a hearing; Petitioner is also denied a COA on this

---

[72] 28 U.S.C. § 2253(c)(2). The denial of a § 2255 petition is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[73] *Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[74] *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[75] *Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).

ruling.

**IT IS SO ORDERED**.

Dated: December 13, 2013

                                              S/ Julie A. Robinson

                                              JULIE A. ROBINSON

                                              UNITED STATES DISTRICT JUDGE